1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 20-12345-scc

4    Adv. Case No. 20-01227-scc

5    - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7

8    THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,

9

10           Debtor.

11   - - - - - - - - - - - - - - - - - - - - - - - - - - x

12   THE ROMAN CATHOLIC DIOCESE OF ROCKVILLE CENTRE, NEW YORK,

13                 Plaintiff,

14           v.

15   ARROWOOD INDEMNITY COMPANY, et al.,

16                 Defendants.

17   - - - - - - - - - - - - - - - - - - - - - - - - - - x

18

19

20

21

22

23

24

25

1              United States Bankruptcy Court

2              One Bowling Green

3              New York, NY  10004

4

5              December 9, 2020

6              10:01 AM

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    B E F O R E :

22    HON SHELLEY C. CHAPMAN

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO: UNKNOWN

1   HEARING re Omnibus Hearing

2

3   HEARING re Doc #7 Debtor's Motion For Entry of Interim and

4   Final Orders (I) Authorizing the Continued Use of the

5   Debtor's Cash Management System, Bank Accounts and Business

6   Forms and (II) Granting Related Relief

7

8   HEARING re Doc #192 Debtors Motion For Entry of an Order (I)

9   Authorizing the Debtor to Continue Its Gift Annuity Program;

10  (II) Pay and Honor Obligations Related Thereto and (III)

11  Granting Related Relief.

12

13  HEARING re Doc #187 Application to Employ Nixon Peabody LLP

14  as Special Counsel

15

16  HEARING re Doc #181 Application to Employ Burns Bowen Bair

17  LLP as Special Insurance Counsel

18

19  HEARING re Doc #182 Application to Employ Berkeley Research

20  Group, LLC as Financial Advisor

21

22  HEARING re Doc #201 Application to Employ Dr. Jon R. Conte

23  as Expert Consultant

24

25

1    HEARING re Doc #174 Motion of the Debtor For an Order

2    Establishing Deadlines For Filing Proofs of Claim and

3    Granting Related Relief

4

5    HEARING re Adversary proceeding: 20-01227-scc The Roman

6    Catholic Diocese of Rockville Centre, Ne v. Arrowood

7    Indemnity Company et al

8    Doc #13 Official Committee of Unsecured Creditors Motion to

9    Intervene in Adversary Proceeding

10

11   Doc #202 Application to Employ Kinsella Media, LLC as Expert

12   Consultant

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    BURNS BOWEN BAIR

4         Attorneys for Official Committee of Unsecured Creditors

5         One South Pinckney Street

6         Madison, WI, 53703

7

8    BY:  JESSE BAIR

9

10   CLYDE & CO

11        Attorneys for Certain Underwriters at Lloyds London

12        101 Second Street

13        San Francisco, CA, 94105

14

15   BY:  ROBERT MEYERS

16

17   PACHULSKI STANG ZIEHL & JONES LLP

18        Attorneys for Official Committee of Unsecured Creditors

19        780 Third Avenue, 34th Floor

20        New York, NY 10017

21

22   BY:  KAREN DINE

23        JAMES STANG

24

25

1    JONES DAY LLP

2         Attorneys for the Debtor

3         250 Vesey Street

4         New York, NY, 10281

5

6    BY:  BENJAMIN ROSENBLUM

7         TODD GEREMIA

8

9    COUGHLIN DUFFY

10        Attorneys for Arrowood Indemnity

11        350 Mount Kemble Avenue

12        Morristown, NJ, 07962

13

14   BY:  KEVIN COUGHLIN

15

16   UNITED STATES DEPARTMENT OF JUSTICE

17        Attorneys for the U.S. Trustee

18        201 Varick Street, Suite 1006

19        New York, NY 10014

20

21   BY:  GREG ZIPES

22

23

24

25

1          P R O C E E D I N G S

2          THE COURT:  Good morning, everyone.  This is Judge

3     Chapman.  We're here this morning for a hearing in the Roman

4     Catholic Diocese of Rockville Center case, Case Number 20-

5     12345.  This hearing is being conducted entirely

6     telephonically via the Court Solutions platform, and a

7     recording is being made of the proceedings.  I have a roster

8     of a large number of people who have registered to

9     participate today.  Please identify yourself for the record

10    when you speak and identify the party on whose behalf you

11    are speaking and please do so each time that you speak.  Who

12    would like to start on behalf of the Debtor?

13         MR. ROSENBLUM:  Good morning.  Benjamin Rosenblum

14    from Jones Day on behalf of the Debtor.

15         THE COURT:  All right.

16         MR. ROSENBLUM:  Your Honor --

17         THE COURT:  Go ahead.

18         MR. ROSENBLUM:  Your Honor, today on the agenda,

19    we have a number of uncontested matters, a status update on

20    the bar gate process.  And then an insurance adversary case,

21    there's a contested matter between the Committee and certain

22    of the insurers.  And if it's okay with the Court, I would

23    just hop right into the agenda with the uncontested matters.

24         THE COURT:  All right.  That sounds good.  Thank

25    you.

1          MR. ROSENBLUM:  Thank you, Your Honor.  Your

2     Honor, number one on the agenda is the Debtor's cash

3     management motion.  We had received some comments from both

4     the United States Trustee and the Official Creditors

5     Committee.  We were able to report -- we were able to

6     resolve those comments.  And they are reflected in the

7     revised proposed form of order that is attached to

8     certificate of no objection at Docket 228.  In addition,

9     there are certain things that we had agreed to that are not

10    reflected in the proposed form of order, which I'd like to

11    put on the record quickly.

12          As part of the discussions with the Committee to

13    reach a consensual cash management agreement, the Debtor and

14    the Committee have agreed on certain reporting that the

15    Debtor will provide to the Committee's financial advisors as

16    a supplement to the MOR.  The Debtor will provided detailed

17    cash receipts and disbursement data in Excel format for the

18    main administrative office's operating account and the main

19    PSIP operating account to the financial advisors as a

20    supplement to the MOR.  The Committee's financial advisor

21    will be able to request specific details, the batch receipt

22    transactions, if needed.  The receipt and disbursement

23    activity from the restricted accounts, the Committee's

24    financial advisors will review the information provided in

25    the monthly operating report for the next one or two months

1    to develop an appropriate protocol to address any additional

2    detailed reporting requests related to restricted accounts

3    should the need arise.  And the Debtor and the Committee

4    agree to work together thereafter with respect to the

5    appropriate reporting of all parties rights being reserved

6    subject to further written agreement.

7           So with the revised proposed form of order, the

8    language included there and with the statement that I just

9    read on the record, the cash management motion, the -- on a

10   final basis is uncontested.  And I'm happy to walk through

11   the changes to the order or if the Court should

12   (indiscernible) the order, we would respectfully request

13   that it be entered in the revised form.

14          THE COURT:  All right.  Very well.  Thank you.  I

15   do see someone from the office of the United States Trustee

16   on the line.  Is there anything that you would like to add?

17          MR. ZIPES:  Good morning, Your Honor.  Greg Zipes

18   with the U.S. Trustee's Office.  I have nothing to add, and

19   our issues have been resolved.

20          THE COURT:  Excellent.  And anyone from the

21   Committee wish to add anything?

22          MS. DINE:  Your Honor, it's Karen Dine from

23   Pachulski Stang Ziehl and Jones on behalf of the Official

24   Committee of Unsecured Creditors.  I have nothing to add,

25   that that's a representation -- an appropriate

1    representation of our resolution of any issues we had.

2              THE COURT:  All right.  Excellent.  Thank you so

3    much.  So with that, the motion for approval of the

4    continued use of the cash management system and related

5    relief will be approved on a final basis.  At the conclusion

6    of the hearing, I would ask, as I always do, that you send

7    copies of the orders in Word version to our chambers.  Okay.

8    So what's next?

9              MR. ROSENBLUM:  Your Honor, Item 2 of the agenda

10   is Debtor's gift annuity motion.  This motion is --

11   effectively a comfort order to continue to comply with the

12   Debtor's obligations under New York law with respect to its

13   gift annuity problem.  So this involves -- these arise out

14   of prepetition contracts, but it's basically donors provide

15   a -- purchase an annuity from the Debtor.  And then the

16   Debtor pays out over the course of -- over the duration of

17   the annuity, and then upon the death of the donor, it will

18   go to either the Diocese or a designated charitable

19   institution.  This is -- this is small dollars.  It's kind

20   of --

21             THE COURT:  Right.

22             MR. ROSENBLUM:  -- quarterly basis -- it's $20,000

23   to -- I think the average annuitant is 87 years old.  And

24   there's no objections to the motion.  We believe we're

25   compelled to do it under New York insurance law.  And if

1    there is an annuitant who passes during the case, there is a

2    notice period to the Committee in case there are any issues

3    with respect to whether payment is appropriate or anything

4    of that nature.  So unless the Court has any questions, we

5    believe that this is -- this relief is appropriate and

6    important for the Diocese's charitable mission.

7              THE COURT:  All right.  All right.  Does anyone

8    else -- this is fairly straightforward, and your papers lay

9    it out all very, very well.  But for the sake of good order,

10   let me ask if anyone wishes to be heard with respect to the

11   Debtor's motion for an order authorizing the Debtor to

12   continue its gift annuity program.  Okay.  Very well.  That

13   will be approved as well.  Now, we get to the hard stuff.

14             MR. ROSENBLUM:  Okay.  Your Honor, this is Item 3

15   of the agenda is the Debtor's application to retain Nixon

16   Peabody as special counsel.  Nixon Peabody was originally

17   slated as an ordinary course professional for the Debtor.

18   They're on our OCP list, but it is possible that during the

19   course of the case, they will exceed the OCP threshold.  But

20   Nixon Peabody has a, I think, two-decade relationship with

21   the Diocese and provides ordinary course legal services,

22   including advising and providing services in connection with

23   the Debtor's historical and ongoing government and internal

24   investigations and reporting obligations to law enforcement.

25             We have folks on the phone from Nixon Peabody to

1    address the Court's questions.  But I think our -- the

2    retention application for, you know, Nixon Peabody explains

3    what they're doing and why the Debtor believes it's

4    important for them to continue to do services.

5              THE COURT:  Yeah.  When I -- when I alluded to the

6    difficult things, I was not talking about the retention.

7    None of the retentions that you have on the agenda for this

8    morning are contested.  I think for the Nixon Peabody one,

9    though, I don't believe we've seen a certificate of no

10   objection, correct?

11             MR. ROSENBLUM:  That's correct, Your Honor.  There

12   is no objection, but we did not file a certificate of no

13   objection, and I think that was just an oversight.  But I

14   can represent that there have been no objections, formal or

15   informal to this retention application.

16             THE COURT:  All right.  No problem.  Then for the

17   sake of good order, let me ask if anybody wishes to be heard

18   with respect to the Debtor's application to employ Nixon

19   Peabody as special counsel to the Debtor.  All right.

20   Excellent.  Thank you.  That'll be -- that'll be approved as

21   well.  And as we've discussed, there are, I believe,

22   counting them now, one, two, three, four other retentions

23   for which you have filed certificates of no objection, and

24   we will enter those after the hearing, unless you have

25   something more you'd like to add with respect to those.

1          MR. ROSENBLUM:  No, Your Honor.  Those are the

2     Committee's retention applications --

3          THE COURT:  Yes.

4          MR. ROSENBLUM:  -- not object to them.  And we had

5     worked out some language with the Committee on the Kinsella

6     Media and Conte retention applications that is reflected in

7     the revised proposed form of order.  So the Debtor does not

8     -- the Debtor doesn't have anything further with respect to

9     those -- the Committee's retention applications.

10          THE COURT:  All right.  Ms. Dine, I didn't mean to

11     steal your thunder, if you would like to formally present

12     these, that's fine.  But since we had the certificates of no

13     objection, I thought we could just move forward.

14          MS. DINE:  Your Honor, it's Karen Dine again from

15     the Pachulski Stang Ziehl and Jones on behalf of the

16     Committee.  And that would be fine, and we appreciate Your

17     Honor taking those under consideration and entering them.

18          THE COURT:  All right.  All right.  Very well.

19     Thank you.  Okay.  What shall we do next?

20          MR. ROSENBLUM:  Your Honor, for the status

21     conference on the bar date motion, my partner Mr. Geremia

22     will be taking that up as just an introduction to his

23     comments.  I think that we have worked out a process for

24     teeing up the bar date motion, which is contested, and Mr.

25     Geremia will get into that.  As a heads-up, I don't -- it is

1  not for today.  But we have started to speak with Committee

2  about whether a mediation process for -- what I think of

3  sort of the midcase issues would make sense.  So that's not

4  for today, those conversations are in their infancy.  But I

5  did want to put that on the Court's radar by way of

6  introduction to Mr. Geremia's presentation.

7          THE COURT:  Is there a -- is there a connection to

8  the possibility of that process to the resolution of the

9  issues around the bar date?

10          MR. ROSENBLUM:  From the Debtor's perspective, we

11  think that there may be -- there may be benefit to mediating

12  some of the issues around the bar date, Your Honor, yes.

13          THE COURT:  Okay.  All right.  So, Mr. Geremia,

14  I'd like to hear from you.

15          MR. GEREMIA:  Good morning, Your Honor.  Todd

16  Geremia for the Debtor.  In connection with the Debtor's

17  application to set a bar date, we had the guidance from your

18  court that -- to -- you approved the request to adjourn the

19  Debtor's reply deadline to a date to be determined.  We have

20  worked with the Committee upon an agreed-upon schedule for

21  the remaining process on the bar date motion.  And that is -

22  - it's a streamlined schedule, and it is as follows.  Any

23  experts that the Debtor proposes to use in connection with

24  this application would be -- their declarations would be

25  served upon the Committee by December 21st.  Depositions of

1    all experts disclosed by the parties in connection with this

2    motion would take place between December 28th and January

3    8th.

4             The Debtor's reply, which will also address any

5    evidentiary issues with the Committee's experts, that is to

6    say there will be no separation motions in limine, Daubert

7    motions or motions to strike experts.  All those experts

8    will be addressed, and their evidentiary use will be

9    addressed in the Debtor's reply, will be submitted by

10   January 11th at 5:00 p.m.  And we propose that our page

11   limit be extended to 30 pages, which we hope not to use all

12   of that, but just have a limit of 30 pages to address those

13   evidentiary issues.  And that a hearing would take place on

14   January 14th.  And that we would propose to present Your

15   Honor an order of presentment unless you would like to

16   proceed in a different manner.

17            THE COURT:  Let me try to -- let me make sure I

18   understand.  You're focusing in on -- I separated the bar

19   date issues into two buckets, so to speak.  One is the

20   timing issue, which is the primary issue, I'll say being

21   prosecuted by the Committee.  And the other set of issues

22   has to do with the information that needs to be provided on

23   the proof of claim, and that's being pressed by the insurers

24   with the opposition of the Committee.  So the schedule that

25   you're talking about pertains to both or it pertains only to

1    the deadline issue?

2              MR. GEREMIA:  It pertains to the deadline issue.

3    And also there are a series of issues that the Committee has

4    raised that don't go to proof of claim, but go to the type

5    of notice that will be served.  And those are issues --

6              THE COURT:  Yes.

7              MR. GEREMIA:  -- that include that we, you know,

8    we have some prospect of working out with the Committee and

9    hoping to narrow or eliminate on that second bucket of

10   issues.

11             THE COURT:  Okay.

12             MR. GEREMIA:  An issue where there's likely to be

13   a dispute is setting of the actual bar date.  So, from our

14   perspective, there's those two --

15             THE COURT:  Okay.

16             MR. GEREMIA:  -- buckets addressed.

17             THE COURT:  Okay.  I mean, I share your optimism

18   that just as we did at the very, very beginning of the case

19   when we talked through more expansive and effective means of

20   notice to the survivor population, I'm confident that you

21   will be able to work those out.  Otherwise what you say,

22   sounds fine.  With respect to the objections of the

23   insurers, what are you contemplating with respect to

24   resolving that?  It may not surprise you that I have some

25   preliminary thoughts.  I don't want to ambush anyone, but

1    I'd like to know.  I always would like to narrow the issues

2    as much as possible.

3              MR. GEREMIA:  Sure.  I think that the issues with

4    respect to the insurers, it may be principally an issue as

5    between the Committee and the insurers.  And those, I

6    believe, can be continued to be worked on in advance of the

7    January -- the proposed January 14th hearing date.

8              THE COURT:  All right.  Well, I'll let that

9    process play out.  But just -- well, I'll leave it at that

10   for now.  Those issues ought to be resolved fairly handily

11   as far as I'm concerned.  All right.  Then is anything else

12   --

13             MR. GEREMIA:  Thank you, Your Honor.  That's all

14   we have on that.

15             THE COURT:  All right.  Ms. Dine, was there

16   anything you wanted to add to that?

17             MS. DINE:  Your Honor, I don't have anything.  I

18   don't know whether Mr. Stang wanted to make any comments.

19             THE COURT:  Sure.  Mr. Stang?  I'm trying to see

20   if he's on my screen, Ms. Dine.  I don't see him.  I think -

21   -

22             MR. STANG:  (Indiscernible.)

23             THE COURT:  Oh, there he is.  There he is.  Hello,

24   Mr. Stang, how are you?

25             MR. STANG:  Good morning, Your Honor.  Your Honor,

1    we have regular conference with Debtor's counsel to discuss

2    issues.  And the bar date issue, obviously, has been the

3    subject of those discussions.  We have repeatedly offered to

4    the Debtor to consult with Dr. Wheatman from the Kinsella

5    firm regarding the type of notice program.  And we hope the

6    Debtor will soon take us up on that because in other cases,

7    where we've used Dr. Wheatman, the Debtors have found her

8    services to be helpful, and we've reached consensual

9    noticing programs.

10           As to mediation, while many of the church cases

11   around the country have had mediators, we didn't feel that

12   we needed one in this stage of the case.  We have these

13   regular calls with the Debtor.  We believe they're

14   constructive.  The Debtor is pushing hard for the timing of

15   this bar date.  And if we actually engaged in mediation

16   regarding the bar date, we would probably be at the date

17   that the Committee's asking for.  So we're not saying that

18   mediation is an unacceptable way -- unacceptable means of

19   trying to resolve authority issues in this case, but on this

20   one, we just didn't see the necessity for it.  But the

21   schedule laid out by counsel is correct.  And we look

22   forward to trying to reach a consensual resolution of both

23   the Debtor's issues and the insurance company's issues.

24           THE COURT:  All right.  Well, I'm going to let the

25   process play out a little longer.  I am not sure about the

1    utility of mediation, you know, midcase as was said.  I

2    think that I'm perfectly capable and would like to have a

3    lot of input into the resolution of those issues.  Even

4    though the -- this is not a hearing, perhaps, it would be

5    fruitful for me to share my view that -- at least with

6    respect to the extra information that the insurance carriers

7    would like to be provided.  My tentative view on that is

8    that that's not something I think is appropriate for a proof

9    of claim.  It's in the nature of an interrogatory.  This is

10   not a complex, you know, proof of claim related to a complex

11   financial instrument where a lot of information is required.

12   So I would encourage the parties to not spend a lot of time

13   arguing over that one.  Again, this is not a hearing on it.

14   Those are my preliminary thoughts.  But they're rather

15   strong preliminary thoughts, and I'm offering them to you to

16   provide some guidance to the process.

17          With respect to the setting of the date, the

18   earlier that's requested by the Debtor versus the CBA

19   deadline, I'm not going to comment on that now.  I'll let

20   that process play out a little more, but I'll only say that,

21   again, that's something that I think I ought to be able to

22   decide after a hearing if you can't get there.  But as a

23   general matter, I'm always open to mediation, I'm just not

24   sure this is the right spot for that.

25          All right.  So unless anyone else has anything to

1    say on that, what shall we talk about next?

2              MR. ROSENBLUM:  Your Honor, this is Benjamin

3    Rosenblum from Jones Day on behalf of the Debtor.  I think

4    that moves us to the contested matter for today, which is

5    the Committee's motion to intervene, so I would -- I would

6    turn that over to Committee counsel.

7              THE COURT:  All right.  Thank you very much.  All

8    right.  Is that you, Mr. Stang, or you, Ms. Dine?

9              MR. STANG:  Actually, Your Honor, the Debtor has

10   special insurance counsel, Mr. Bair is on the phone.  And he

11   would be arguing the motion on behalf of the Committee.

12             THE COURT:  All right.  There you are.  Hello, Mr.

13   Bair.  Good morning.

14             MR. BAIR:  Good morning.  Good morning, Your

15   Honor.  Yes, this is Jesse Bair from Burns Bowen Bair,

16   special insurance counsel for the Official Committee of

17   Unsecured Creditors.  And if it would please the Court,

18   we're happy to go forward with a discussion of the motion or

19   if Your Honor has any questions at the outset, we're

20   certainly happy to answer those straight away.

21             THE COURT:  I've read the papers.  And basically

22   there are two sets of objections.  The objections largely

23   seek to either preclude the Committee from intervening or

24   limit, somehow limit the Committee's participation in the

25   case.  And, I mean, perhaps, it's best for me to go right to

1    the counsel for the insurers because I don't see any basis

2    for denying the Committee's motion to intervene.  And the

3    proposed limitations that I saw, I believe it was in the

4    Lloyd's objection or the LMI response.  Frankly, doesn't

5    make any sense to me.  Under applicable Second Circuit law,

6    the Committee has a right to intervene.  Even if the

7    Committee didn't have an absolute right to intervene, I can

8    think of no stronger case in which it's appropriate for the

9    Committee to intervene in this adversary proceeding.

10   They're entitled to participate.  They're entitled to access

11   to information.  That's the way we're going to get through

12   this.

13          So I'm happy to hear from counsel to the objecting

14   parties, if you think there's something that I'm missing in

15   your papers.  But my inclination, having read everything, is

16   that the Committee's motion to intervene should readily be

17   granted.

18          MR. COUGHLIN:  Your Honor.

19          THE COURT:  Yes.

20          MR. COUGHLIN:  This is Kevin Coughlin from

21   Coughlin Duffy.  We represent Arrowood.  We were the prime

22   objector.  I recognize Your Honor's comments.  We recognize

23   the scope of the Second Circuit's decision in Caldor.  But

24   what we wanted to bring to the Court's attention here is

25   what we consider to be rather unique circumstances, that as

1    far as we could tell on all the decisions in the Second

2    Circuit citing Caldor have never addressed, and, in fact, we

3    could only find one case in the country, and that that's

4    Northern Diocese of Alaska case that dealt with this.  But

5    it's -- it's sort of previewing a real problem that is going

6    to come home to roost in this case.

7            And it starts with the fact that Plaintiffs

8    lawyers are being called the Unsecured Creditors Committee

9    for purposes of this bankruptcy proceeding.  And we

10   recognize the Second Circuit's decision with committees of

11   this nature.  However, in every case that we've looked at,

12   the Unsecured Creditors Committee had a cause of action, a

13   right outside of the bankruptcy if it hadn't occurred that

14   they could have protected and filed litigation.

15           And, in this case, New York State law does not

16   recognize the Plaintiffs as a third-party beneficiary or any

17   kind of beneficiary with respect to the alleged liability

18   policies here.  And, therefore, Your Honor, there -- they

19   really don't have standing.  We recognize your comments.

20   I'm not going to argue that point.  But there is a very

21   large practical problem that's going to loom.

22           THE COURT:  What is -- what is the practical

23   problem?  The Committee is not --

24           MR. COUGHLIN:  Here is --

25           THE COURT:  Excuse me.  The Committee, as a result

1    of being an intervenor, is not going to obtain a cause of

2    action or a judgment or anything of nature which it does not

3    have.  You're quite correct on that.  The Committee is the

4    vehicle for the representation of, at this point, uncounted

5    individuals who would be -- have a right to intervene.  This

6    is nearly an efficient procedural mechanism for the

7    Committee on behalf of its constituents, the victims, to

8    participate.

9              MR. COUGHLIN:  Well, that's a perfect --I'm sorry

10   -- go ahead, Your Honor.  I apologize.

11             THE COURT:  The denial of their intervention

12   motion would simply lead to a request by the Committee for

13   them to have the same access to information and other events

14   in the prosecution of this case that they would be entitled

15   to as intervenors.  My giving them intervenor status --

16   excuse me -- does not give them a substantive right to which

17   they aren't otherwise not entitled.  And if you want to --

18   if you want to put a lawyerly for the avoidance of doubt

19   proviso in the order, I would ask the Committee and the

20   Debtor to entertain that.  But, in my view, you're -- you're

21   seeing -- you're creating a problem that's just not there.

22             MR. COUGHLIN:  Well, I appreciate that comment,

23   Your Honor.  But you're actually -- you've actually given me

24   a great segue because here's the actual problem.  For over

25   two years now, we have been seeking information from the

1    Debtor related to the diocese's practices with respect to

2    pedophilia, abusive priests, and information going back in

3    time on those topics, and they've refused to give us that

4    information.  And as we --

5            THE COURT:  What does that have to do with the

6    right of the Committee, newly formed in connection with this

7    case, have to do with the Debtor's cooperation or not with

8    your requests?

9            MR. COUGHLIN:  Well, here's where it comes and

10   intersects because we're going to be seeking, in this

11   adversary proceeding, that kind of information.  The Diocese

12   has objected to giving us that information for almost two

13   years, saying they don't want to give us to us because they

14   don't want to have to turn it over to the Plaintiffs.  And

15   the problem with that information, in the context of

16   insurance, Your Honor, is that if that information turns out

17   to be harmful to the Debtor, with respect to their knowledge

18   going back in time, that affects the amount of insurance

19   they might be able to recover.  It's a standard relevant

20   topic that is undertaken in discovery in all of these cases.

21           The Plaintiffs, on the other hand, have a -- have

22   a desire to get their hands on that information and use it

23   to drive up values of case -- of the cases.  And so what you

24   have, you're going to have both of those things playing out.

25   And at --

1          THE COURT:  Can --

2          MR. COUGHLIN:  I'm sorry.

3          THE COURT:  You're -- you're (sound drops).

4          MR. COUGHLIN:  I'm sorry, Your Honor, if you're

5     speaking, you've broken up here.

6          THE COURT:  No.  I'm sorry.  Unfortunately, where

7     I'm -- where I am, there's construction going on.  Could you

8     give me a moment, please.

9          MR. COUGHLIN:  Sure.

10         THE COURT:  I'm going to try and find another

11    location.

12         MR. COUGHLIN:  Sure.

13         THE COURT:  I'm just -- there is no -- I hear what

14    you're saying.  I hear the words, you know, but it has

15    literally nothing to do with the -- indeed the necessity and

16    the efficiency of the Committee being an intervenor in this

17    case.  This case is about the victims.  That's what it's

18    about.  So as this case proceeds, and as the Debtor, and it

19    will cooperate with appropriate requests for information.

20    To the extent that there is a need for a protective order of

21    some kind, which I'm not suggesting it is appropriate or

22    not, we will deal with it then.

23         But the concept that information will -- your

24    words "drive up the settlement value," this case is going to

25    settle appropriately based on a whole host of factors.  And

1    the participation of the Committee, on behalf of the

2    victims, is crucial.  So I find nothing -- nothing that you

3    have said to convince me that there's any basis for denying

4    the Committee's right to intervene.  As and when there are

5    protective order issues or other issues that are of concern

6    to you, I'd be more than happy to hear from you.  But in

7    terms of cutting off the Committee's right to intervene, I

8    can't think of a stronger case for intervention than this

9    one.

10            MR. COUGHLIN:  I understand, Your Honor.  May I

11   ask one further question?

12            THE COURT:  Of course.

13            MR. COUGHLIN:  You raised a few moments ago an

14   observation about the form of order.  One of the things

15   that's troubling to our client is the fact that there's --

16   there doesn't seem to be any sequencing of the Committee's

17   right to participate.  And I wonder whether Your Honor would

18   be open to addressing that issue in the form of -- we'll try

19   and negotiate it.  But the Committee should not be permitted

20   to sit back and let the Debtor and the insurers brief

21   issues, and then decide to submit a brief as a sort of

22   omnibus surreply out of nowhere, which we can't reply to.

23   Would Your Honor be willing to consider some sort of

24   restriction or sequencing on their participation?

25           THE COURT:  Well, they're -- once they're

1    intervenors, they're subject to the same rules that

2    everybody else is.  There's no -- there's no ambush

3    provision.  So I think that this is not -- it's not

4    something that needs to be addressed separately.  I mean,

5    when there's a briefing schedule set up, there's a briefing

6    schedule set up, nothing would give the Committee, as an

7    intervenor, the right to swoop in and deny you -- deny any

8    of the insurers their due process right to be heard with

9    respect to issues raised.  So I don't think that a bespoke

10   provision is necessary.

11              MR. COUGHLIN:  Thank you.

12              THE COURT:  All right.

13              MR. STANG:  Your Honor, this is Mr. Stang --

14              THE COURT:  So Arrowood's objection is going to be

15   overruled.

16              MR. STANG:  Sorry.

17              THE COURT:  That leaves us with, is it LMI?

18              MR. MEYERS:  Yes, Your Honor.  It's Bob Meyers

19   appearing on behalf of London Market Insurers.  Can you hear

20   me okay?

21              THE COURT:  Yes, I can.  Thank you.

22              MR. MEYERS:  Okay.  Great.  Several of the

23   comments that the Court made in response to Arrowood's

24   objection sort of alleviated certain of the fundamental

25   concerns underlying our objection.  And that is, namely, in

1    the motion they didn't address anything -- the Committee

2    didn't address anything relating to the ostensible

3    parameters of its involvement, and it's just threw this

4    paragraph in their proposed order addressing it.  And in

5    light of that, we didn't feel comfortable working with the

6    list of the ostensible limitations that appeared, to us, to

7    be exhaustive.  The comments about the Court's expectations

8    in terms of the scope of the Committee's involvement are

9    more in line with what I think we proposed, frankly, in our

10   alternative language that we proposed.  But we appreciate

11   the Court's earlier comments, and they go a long way to

12   alleviating the types of concerns that led to our objection.

13            THE COURT:  All right.  So translated, does that

14   mean you're withdrawing your objection?

15            MR. MEYERS:  Well, no, not withdrawing the

16   objection, but we appreciate the Court's comments with

17   respect to how it -- how it envisions the Committee's

18   participation.

19            THE COURT:  But it did not -- I'm looking at your

20   -- give me a moment.  You, in paragraph 7 of -- in paragraph

21   7 of your objection, you requested a modification to

22   paragraph 2 of the proposed order.

23            MR. MEYERS:  That's correct, Your Honor.

24            THE COURT:  Yeah.  I'm not inclined to agree with

25   you on that.

1          MR. MEYERS:  Okay.  Very well, Your Honor.

2          THE COURT:  All right.  All right.  I think that's

3     all.  There were a number of joinders, but I believe I've

4     deposed of them.

5          MR. STANG:  (Indiscernible.)

6          THE COURT:  Yes.

7          MR. STANG:  I'm sorry, Your Honor.  It's Mr.

8     Stang.  I apologize for interrupting.  I thought you were

9     moving on to another matter.

10          THE COURT:  No.  I'm just trying to find if any of

11     the other -- I think I've deposed of all of the joinders.

12          MR. STANG:  Your Honor, I have one comment I'd

13     like to make regarding the statement made by the Arrowood

14     counsel, if I might.

15          THE COURT:  Well, you might.  I overruled him, so

16     if --

17          MR. STANG:  No, I heard you.

18          THE COURT:  -- you'd still like to make a

19     statement.  That's fine.

20          MR. STANG:  I heard you.  I don't want to snatch

21     defeat from the jaws of victory.  But he characterized the

22     Committee as essentially a Committee for the Plaintiffs'

23     lawyers, and I must take some exception to that.  The

24     Committee was appointed --

25          THE COURT:  I didn't -- I didn't hear that.  I

1    heard Plaintiffs.  I didn't hear Plaintiffs' lawyers.

2            MR. STANG:  Well, for that matter -- all right.

3    For the Plaintiffs for that matter.  The Committee was

4    appointed as the official committee in this case.  And while

5    it is true that all of the members are abuse survivors,

6    their responsibility is as an official committee of all

7    unsecured creditors.  We take that charge seriously, and we

8    do not (indiscernible) simply as a committee for tort

9    claimants.  So I just wanted to make that clear.

10           THE COURT:  Understood.  All right.  Is there

11   anything else that we need to do with respect to the

12   intervention motion?  All right.

13           MR. BAIR:  Your Honor.

14           THE COURT:  Yes.

15           MR. BAIR:  Your Honor, this is Jesse Bair from

16   Burns Bowen Bair, special insurance counsel for the

17   Committee.  Just to confirm, Your Honor, will Your Honor be

18   entering the proposed order the Committee submitted or do

19   you need anything further from us on that end?  Was my only

20   question.

21           THE COURT:  I -- I intend to submit the order that

22   the Committee submitted.

23           MR. BAIR:  Okay.  Very good.  Thank you for the

24   clarification.

25           THE COURT:  All right.  It should reflect, to the

1   extent that it doesn't already, it should reflect that the

2   objections and the joinders were overruled for the reasons

3   stated on the record of the hearing.  All right.  I think --

4   so just as a reminder, you'll send us a revised Word version

5   of that order.  We have the orders on the retentions.  We

6   need the orders on cash management and on the annuity

7   program.  I think as we have been talking, my deputy has

8   already entered the four retention orders.  We like to keep

9   up with you.  So we can take care of the other orders

10  afterwards.

11          We still have pending out there, not to be

12  discussed today because it's not at all on the calendar, the

13  issues relating to the IAC, and I assume that the parties

14  are still continuing discussions with respect to that.

15          MAN:  Your Honor --

16          MR. ROSENBLUM:  Your Honor --

17          MAN:  Go ahead, Ben.

18          MR. ROSENBLUM:  Benjamin Rosenblum from Jones Day.

19  That's correct, Your Honor.

20          THE COURT:  Okay.  All right.  Well, I think

21  that's all we have for today then.  Thank you all for

22  assembling yourselves.  As always, please reach out to my

23  clerk if there's anything that you need the Court's

24  assistance with.  Above all, please stay safe during this

25  perilous time, and we'll look forward to talking to you all

1    next time.  That concludes our hearing for today.  Thank

2    you.

3              MAN:  Thank you, Your Honor.

4              MAN:  Thank you.

5              (Whereupon these proceedings were concluded at

6    10:45 AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I N D E X

RULINGS

|  | Page | Line |
|---|---|---|
| Motion for continued use of the cash management system Granted | 10 | 3 |
| Gift annuity program Motion Granted | 11 | 13 |
| Nixon Peabody Motion Granted | 12 | 20 |

1                    C E R T I F I C A T I O N

2

3       I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    Sonya

6    Ledanski Hyde

7

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2020.12.14 15:24:02 -05'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  December 10, 2020

| & | 3 | | |
|---|---|---|---|
| **&** 5:10,17 | **3** 11:14 33:7 | addressed 15:8,9 16:16 22:2 27:4 | anybody 12:17 |
| **0** | **30** 15:11,12 | addressing 26:18 28:4 | apologize 23:10 29:8 |
| **07962** 6:12 | **300** 34:22 | adjourn 14:18 | appeared 28:6 |
| **1** | **330** 34:21 | administrative 8:18 | appearing 27:19 |
| **10** 33:7 34:25 | **34th** 5:19 | adv 1:4 | applicable 21:5 |
| **10004** 2:3 | **350** 6:11 | advance 17:6 | application 3:13 3:16,19,22 4:11 11:15 12:2,15,18 14:17,24 |
| **10014** 6:19 | **5** | adversary 4:5,9 7:20 21:9 24:11 | applications 13:2 13:6,9 |
| **10017** 5:20 | **53703** 5:6 | advising 11:22 | appointed 29:24 30:4 |
| **1006** 6:18 | **5:00** 15:10 | advisor 3:20 8:20 | appreciate 13:16 23:22 28:10,16 |
| **101** 5:12 | **7** | advisors 8:15,19 8:24 | appropriate 9:1,5 9:25 11:3,5 19:8 21:8 25:19,21 |
| **10281** 6:4 | **7** 3:3 28:20,21 | agenda 7:18,23 8:2 10:9 11:15 12:7 | appropriately 25:25 |
| **10:01** 2:6 | **780** 5:19 | ago 26:13 | approval 10:3 |
| **10:45** 32:6 | **8** | agree 9:4 28:24 | approved 10:5 11:13 12:20 14:18 |
| **11** 33:9 | **87** 10:23 | agreed 8:9,14 14:20 | aren't 23:17 |
| **11501** 34:23 | **8th** 15:3 | agreement 8:13 9:6 | argue 22:20 |
| **11th** 15:10 | **9** | ahead 7:17 23:10 31:17 | arguing 19:13 20:11 |
| **12** 33:11 | **9** 2:5 | al 1:15 4:7 | arrowood 1:15 4:6 6:10 21:21 29:13 |
| **12345** 7:5 | **94105** 5:13 | alaska 22:4 | arrowood's 27:14 27:23 |
| **13** 4:8 33:9 | **a** | alleged 22:17 | asking 18:17 |
| **14th** 15:14 17:7 | able 8:5,5,21 16:21 19:21 24:19 | alleviated 27:24 | assembling 31:22 |
| **174** 4:1 | absolute 21:7 | alleviating 28:12 | assistance 31:24 |
| **181** 3:16 | abuse 30:5 | alluded 12:5 | assume 31:13 |
| **182** 3:19 | abusive 24:2 | alternative 28:10 | attached 8:7 |
| **187** 3:13 | access 21:10 23:13 | ambush 16:25 27:2 | attention 21:24 |
| **192** 3:8 | account 8:18,19 | amount 24:18 | attorneys 5:4,11 5:18 6:2,10,17 |
| **2** | accounts 3:5 8:23 9:2 | annuitant 10:23 11:1 | authority 18:19 |
| **2** 10:9 28:22 | accurate 34:4 | annuity 3:9 10:10 10:13,15,17 11:12 31:6 33:9 | |
| **20** 7:4 33:11 | action 22:12 23:2 | answer 20:20 | |
| **20,000** 10:22 | activity 8:23 | | |
| **20-01227** 1:4 4:5 | actual 16:13 23:24 | | |
| **20-12345** 1:3 | add 9:16,18,21,24 12:25 17:16 | | |
| **201** 3:22 6:18 | addition 8:8 | | |
| **202** 4:11 | additional 9:1 | | |
| **2020** 2:5 34:25 | address 9:1 12:1 15:4,12 28:1,2 | | |
| **21st** 14:25 | | | |
| **228** 8:8 | | | |
| **250** 6:3 | | | |
| **28th** 15:2 | | | |

**authorizing** 3:4,9
11:11
**avenue** 5:19 6:11
**average** 10:23
**avoidance** 23:18

**b**

**b** 2:21
**back** 24:2,18
26:20
**bair** 3:16 5:3,8
20:10,13,14,15,15
30:13,15,15,16,23
**bank** 3:5
**bankruptcy** 1:1
2:1,23 22:9,13
**bar** 7:20 13:21,24
14:9,12,17,21
15:18 16:13 18:2
18:15,16
**based** 25:25
**basically** 10:14
20:21
**basis** 9:10 10:5,22
21:1 26:3
**batch** 8:21
**beginning** 16:18
**behalf** 7:10,12,14
9:23 13:15 20:3
20:11 23:7 26:1
27:19
**believe** 10:24 11:5
12:9,21 17:6
18:13 21:3 29:3
**believes** 12:3
**ben** 31:17
**beneficiary** 22:16
22:17
**benefit** 14:11
**benjamin** 6:6 7:13
20:2 31:18
**berkeley** 3:19
**bespoke** 27:9

**best** 20:25
**bob** 27:18
**bowen** 3:16 5:3
20:15 30:16
**bowling** 2:2
**brief** 26:20,21
**briefing** 27:5,5
**bring** 21:24
**broken** 25:5
**bucket** 16:9
**buckets** 15:19
16:16
**burns** 3:16 5:3
20:15 30:16
**business** 3:5

**c**

**c** 2:22 5:1 7:1 34:1
34:1
**ca** 5:13
**caldor** 21:23 22:2
**calendar** 31:12
**called** 22:8
**calls** 18:13
**can't** 19:22 26:8
26:22
**capable** 19:2
**care** 31:9
**carriers** 19:6
**case** 1:3,4 7:4,4,20
11:1,2,19 16:18
18:12,19 20:25
21:8 22:3,4,6,11
22:15 23:14 24:7
24:23 25:17,17,18
25:24 26:8 30:4
**cases** 18:6,10
24:20,23
**cash** 3:5 8:2,13,17
9:9 10:4 31:6 33:6
**catholic** 1:8,12
4:6 7:4
**cause** 22:12 23:1

**cba** 19:18
**center** 7:4
**centre** 1:8,12 4:6
**certain** 5:11 7:21
8:9,14 27:24
**certainly** 20:20
**certificate** 8:8
12:9,12
**certificates** 12:23
13:12
**certified** 34:3
**chambers** 10:7
**changes** 9:11
**chapman** 2:22 7:3
**characterized**
29:21
**charge** 30:7
**charitable** 10:18
11:6
**church** 18:10
**circuit** 21:5 22:2
**circuit's** 21:23
22:10
**circumstances**
21:25
**citing** 22:2
**claim** 4:2 15:23
16:4 19:9,10
**claimants** 30:9
**clarification**
30:24
**clear** 30:9
**clerk** 31:23
**client** 26:15
**clyde** 5:10
**come** 22:6
**comes** 24:9
**comfort** 10:11
**comfortable** 28:5
**comment** 19:19
23:22 29:12
**comments** 8:3,6
13:23 17:18 21:22

22:19 27:23 28:7
28:11,16
**committee** 4:8 5:4
5:18 7:21 8:5,12
8:14 9:3,21,24
11:2 13:5,16 14:1
14:20,25 15:21,24
16:3,8 17:5 20:6
20:11,16,23 21:6
21:7,9 22:8,12,23
22:25 23:3,7,12
23:19 24:6 25:16
26:1,19 27:6 28:1
29:22,22,24 30:3
30:4,6,8,17,18,22
**committees** 22:10
**committee's** 8:15
8:20,23 13:2,9
15:5 18:17 20:5
20:24 21:2,16
26:4,7,16 28:8,17
**company** 1:15 4:7
**company's** 18:23
**compelled** 10:25
**complex** 19:10,10
**comply** 10:11
**concept** 25:23
**concern** 26:5
**concerned** 17:11
**concerns** 27:25
28:12
**concluded** 32:5
**concludes** 32:1
**conclusion** 10:5
**conducted** 7:5
**conference** 13:21
18:1
**confident** 16:20
**confirm** 30:17
**connection** 11:22
14:7,16,23 15:1
24:6

consensual 8:13 18:8,22
consider 21:25 26:23
consideration 13:17
constituents 23:7
construction 25:7
constructive 18:14
consult 18:4
consultant 3:23 4:12
conte 3:22 13:6
contemplating 16:23
contested 7:21 12:8 13:24 20:4
context 24:15
continue 3:9 10:11 11:12 12:4
continued 3:4 10:4 17:6 33:6
continuing 31:14
contracts 10:14
conversations 14:4
convince 26:3
cooperate 25:19
cooperation 24:7
copies 10:7
correct 12:10,11 18:21 23:3 28:23 31:19
coughlin 6:9,14 21:18,20,20,21 22:24 23:9,22 24:9 25:2,4,9,12 26:10,13 27:11
counsel 3:14,17 11:16 12:19 18:1 18:21 20:6,10,16 21:1,13 29:14

30:16
counting 12:22
country 18:11 22:3 34:21
course 10:16 11:17,19,21 26:12
court 1:1 2:1 7:2,6 7:15,17,22,24 9:11,14,20 10:2 10:21 11:4,7 12:5 12:16 13:3,10,18 14:7,13,18 15:17 16:6,11,15,17 17:8,15,19,23 18:24 20:7,12,17 20:21 21:19 22:22 22:25 23:11 24:5 25:1,3,6,10,13 26:12,25 27:12,14 27:17,21,23 28:13 28:19,24 29:2,6 29:10,15,18,25 30:10,14,21,25 31:20
court's 12:1 14:5 21:24 28:7,11,16 31:23
creating 23:21
creditors 4:8 5:4 5:18 8:4 9:24 20:17 22:8,12 30:7
crucial 26:2
cutting 26:7

**d**

d 7:1 33:1
data 8:17
date 13:21,24 14:9,12,17,19,21 15:19 16:13 17:7 18:2,15,16,16 19:17 34:25

daubert 15:6
day 6:1 7:14 20:3 31:18
deadline 14:19 16:1,2 19:19
deadlines 4:2
deal 25:22
dealt 22:4
death 10:17
debtor 1:10 3:9 4:1 6:2 7:12,14 8:13,15,16 9:3 10:15,16 11:11,17 12:3,19 13:7,8 14:16,23 18:4,6 18:13,14 19:18 20:3,9 23:20 24:1 24:17 25:18 26:20
debtors 3:8 18:7
debtor's 3:3,5 8:2 10:10,12 11:11,15 11:23 12:18 14:10 14:16,19 15:4,9 18:1,23 24:7
decade 11:20
december 2:5 14:25 15:2 34:25
decide 19:22 26:21
decision 21:23 22:10
decisions 22:1
declarations 14:24
defeat 29:21
defendants 1:16
denial 23:11
deny 27:7,7
denying 21:2 26:3
department 6:16
deposed 29:4,11
depositions 14:25

deputy 31:7
designated 10:18
desire 24:22
detailed 8:16 9:2
details 8:21
determined 14:19
develop 9:1
didn't 13:10 18:11,20 21:7 28:1,2,5 29:25,25 30:1
different 15:16
difficult 12:6
dine 5:22 9:22,22 13:10,14,14 17:15 17:17,20 20:8
diocese 1:8,12 4:6 7:4 10:18 11:21 22:4 24:11
diocese's 11:6 24:1
disbursement 8:17,22
disclosed 15:1
discovery 24:20
discuss 18:1
discussed 12:21 31:12
discussion 20:18
discussions 8:12 18:3 31:14
dispute 16:13
district 1:2
doc 3:3,8,13,16,19 3:22 4:1,8,11
docket 8:8
doesn't 13:8 21:4 26:16 31:1
doing 12:3
dollars 10:19
donor 10:17
donors 10:14

**don't** 12:9 13:25
16:4,25 17:17,18
17:20 21:1 22:19
24:13,14 27:9
29:20
**doubt** 23:18
**dr** 3:22 18:4,7
**drive** 24:23 25:24
**drops** 25:3
**due** 27:8
**duffy** 6:9 21:21
**duration** 10:16

**e**

**e** 2:21,21 5:1,1 7:1
7:1 33:1 34:1
**earlier** 19:18
28:11
**ecro** 2:25
**effective** 16:19
**effectively** 10:11
**efficiency** 25:16
**efficient** 23:6
**either** 10:18 20:23
**eliminate** 16:9
**employ** 3:13,16
3:19,22 4:11
12:18
**encourage** 19:12
**enforcement**
11:24
**engaged** 18:15
**enter** 12:24
**entered** 9:13 31:8
**entering** 13:17
30:18
**entertain** 23:20
**entirely** 7:5
**entitled** 21:10,10
23:14,17
**entry** 3:3,8
**envisions** 28:17
**essentially** 29:22

**establishing** 4:2
**et** 1:15 4:7
**events** 23:13
**everybody** 27:2
**evidentiary** 15:5,8
15:13
**exceed** 11:19
**excel** 8:17
**excellent** 9:20
10:2 12:20
**exception** 29:23
**excuse** 22:25
23:16
**exhaustive** 28:7
**expansive** 16:19
**expectations** 28:7
**expert** 3:23 4:11
**experts** 14:23
15:1,5,7,7
**explains** 12:2
**extended** 15:11
**extent** 25:20 31:1
**extra** 19:6

**f**

**f** 2:21 34:1
**fact** 22:2,7 26:15
**factors** 25:25
**fairly** 11:8 17:10
**far** 17:11 22:1
**feel** 18:11 28:5
**file** 12:12
**filed** 12:23 22:14
**filing** 4:2
**final** 3:4 9:10 10:5
**financial** 3:20
8:15,19,20,24
19:11
**find** 22:3 25:10
26:2 29:10
**fine** 13:12,16
16:22 29:19
**firm** 18:5

**floor** 5:19
**focusing** 15:18
**folks** 11:25
**follows** 14:22
**foregoing** 34:3
**form** 8:7,10 9:7
9:13 13:7 26:14
26:18
**formal** 12:14
**formally** 13:11
**format** 8:17
**formed** 24:6
**forms** 3:6
**forward** 13:13
18:22 20:18 31:25
**found** 18:7
**four** 12:22 31:8
**francisco** 5:13
**frankly** 21:4 28:9
**fruitful** 19:5
**fundamental**
27:24
**further** 9:6 13:8
26:11 30:19

**g**

**g** 7:1
**gate** 7:20
**general** 19:23
**geremia** 6:7 13:21
13:25 14:13,15,16
16:2,7,12,16 17:3
17:13
**geremia's** 14:6
**gift** 3:9 10:10,13
11:12 33:9
**give** 23:16 24:3,13
25:8 27:6 28:20
**given** 23:23
**giving** 23:15
24:12
**go** 7:17 10:18 16:4
16:4 20:18,25
23:10 28:11 31:17

**going** 18:24 19:19
21:11 22:5,20,21
23:1 24:2,10,18
24:24 25:7,10,18
27:14
**good** 7:2,13,24
9:17 11:9 12:17
14:15 17:25 20:13
20:14,14 30:23
**government** 11:23
**granted** 21:17
33:7,9,11
**granting** 3:6,11
4:3
**great** 23:24 27:22
**green** 2:2
**greg** 6:21 9:17
**group** 3:20
**guidance** 14:17
19:16

**h**

**hadn't** 22:13
**hand** 24:21
**handily** 17:10
**hands** 24:22
**happy** 9:10 20:18
20:20 21:13 26:6
**hard** 11:13 18:14
**harmful** 24:17
**heads** 13:25
**hear** 14:14 21:13
25:13,14 26:6
27:19 29:25 30:1
**heard** 11:10 12:17
27:8 29:17,20
30:1
**hearing** 3:1,1,3,8
3:13,16,19,22 4:1
4:5 7:3,5 10:6
12:24 15:13 17:7
19:4,13,22 31:3
32:1

hello 17:23 20:12
helpful 18:8
here's 23:24 24:9
he's 17:20
historical 11:23
home 22:6
hon 2:22
honor 3:10 7:16
7:18 8:1,2 9:17,22
10:9 11:14 12:11
13:1,14,17,20
14:12,15 15:15
17:13,17,25,25
20:2,9,15,19
21:18 22:18 23:10
23:23 24:16 25:4
26:10,17,23 27:13
27:18 28:23 29:1
29:7,12 30:13,15
30:17,17 31:15,16
31:19 32:3
honor's 21:22
hop 7:23
hope 15:11 18:5
hoping 16:9
host 25:25
hyde 4:25 34:3,8

**i**

iac 31:13
identify 7:9,10
ii 3:6,10
iii 3:10
important 11:6
12:4
inclination 21:15
inclined 28:24
include 16:7
included 9:8
including 11:22
indemnity 1:15
4:7 6:10
indiscernible 9:12
17:22 29:5 30:8

individuals 23:5
infancy 14:4
informal 12:15
information 8:24
15:22 19:6,11
21:11 23:13,25
24:2,4,11,12,15
24:16,22 25:19,23
input 19:3
institution 10:19
instrument 19:11
insurance 3:17
7:20 10:25 18:23
19:6 20:10,16
24:16,18 30:16
insurers 7:22
15:23 16:23 17:4
17:5 21:1 26:20
27:8,19
intend 30:21
interim 3:3
internal 11:23
interrogatory
19:9
interrupting 29:8
intersects 24:10
intervene 4:9 20:5
21:2,6,7,9,16 23:5
26:4,7
intervening 20:23
intervenor 23:1
23:15 25:16 27:7
intervenors 23:15
27:1
intervention
23:11 26:8 30:12
introduction
13:22 14:6
investigations
11:24
involvement 28:3
28:8

involves 10:13
issue 15:20,20
16:1,2,12 17:4
18:2 26:18
issues 9:19 10:1
11:2 14:3,9,12
15:5,13,19,21
16:3,5,10 17:1,3
17:10 18:2,19,23
18:23 19:3 26:5,5
26:21 27:9 31:13
item 10:9 11:14
it's 7:22 9:22
10:14,19,22 12:3
13:14 14:22 19:9
20:25 21:8 22:5,5
24:19 25:17 27:3
27:18 28:3 29:7
31:12
i'd 8:10 14:14
17:1 26:6 29:12
i'll 15:20 17:8,9
19:19,20
i'm 9:10 16:20
17:11,19 18:24
19:2,15,19,23,23
21:13,14 22:20
23:9 25:2,4,6,7,10
25:13,21 28:19,24
29:7,10
i've 20:21 29:3,11

**j**

james 5:23
january 15:2,10
15:14 17:7,7
jaws 29:21
jesse 5:8 20:15
30:15
joinders 29:3,11
31:2
jon 3:22
jones 5:17 6:1
7:14 9:23 13:15

20:3 31:18
judge 2:23 7:2
judgment 23:2
justice 6:16

**k**

karen 5:22 9:22
13:14
keep 31:8
kemble 6:11
kevin 6:14 21:20
kind 10:19 22:17
24:11 25:21
kinsella 4:11 13:5
18:4
know 12:2 16:7
17:1,18 19:1,10
25:14
knowledge 24:17

**l**

laid 18:21
language 9:8 13:5
28:10
large 7:8 22:21
largely 20:22
law 10:12,25
11:24 21:5 22:15
lawyerly 23:18
lawyers 22:8
29:23 30:1
lay 11:8
lead 23:12
leave 17:9
leaves 27:17
led 28:12
ledanski 4:25 34:3
34:8
legal 11:21 34:20
liability 22:17
light 28:5
limine 15:6
limit 15:11,12
20:24,24

**limitations** 21:3 28:6
**line** 9:16 28:9 33:4
**list** 11:18 28:6
**literally** 25:15
**litigation** 22:14
**little** 18:25 19:20
**llc** 3:20 4:11
**lloyds** 5:11
**lloyd's** 21:4
**llp** 3:13,17 5:17 6:1
**lmi** 21:4 27:17
**location** 25:11
**london** 5:11 27:19
**long** 28:11
**longer** 18:25
**look** 18:21 31:25
**looked** 22:11
**looking** 28:19
**loom** 22:21
**lot** 19:3,11,12

**m**

**madison** 5:6
**main** 8:18,18
**man** 31:15,17 32:3,4
**management** 3:5 8:3,13 9:9 10:4 31:6 33:7
**manner** 15:16
**market** 27:19
**matter** 1:6 7:21 19:23 20:4 29:9 30:2,3
**matters** 7:19,23
**mean** 13:10 16:17 20:25 27:4 28:14
**means** 16:19 18:18
**mechanism** 23:6

**media** 4:11 13:6
**mediating** 14:11
**mediation** 14:2 18:10,15,18 19:1 19:23
**mediators** 18:11
**members** 30:5
**meyers** 5:15 27:18 27:18,22 28:15,23 29:1
**midcase** 14:3 19:1
**mineola** 34:23
**missing** 21:14
**mission** 11:6
**modification** 28:21
**moment** 25:8 28:20
**moments** 26:13
**monthly** 8:25
**months** 8:25
**mor** 8:16,20
**morning** 7:2,3,13 9:17 12:8 14:15 17:25 20:13,14,14
**morristown** 6:12
**motion** 3:3,8 4:1,8 8:3 9:9 10:3,10,10 10:24 11:11 13:21 13:24 14:21 15:2 20:5,11,18 21:2 21:16 23:12 28:1 30:12 33:6,9,11
**motions** 15:6,7,7
**mount** 6:11
**move** 13:13
**moves** 20:4
**moving** 29:9

**n**

**n** 5:1 7:1 33:1 34:1
**narrow** 16:9 17:1

**nature** 11:4 19:9 22:11 23:2
**ne** 4:6
**nearly** 23:6
**necessary** 27:10
**necessity** 18:20 25:15
**need** 9:3 25:20 30:11,19 31:6,23
**needed** 8:22 18:12
**needs** 15:22 27:4
**negotiate** 26:19
**never** 22:2
**new** 1:2,8,12 2:3 5:20 6:4,19 10:12 10:25 22:15
**newly** 24:6
**nixon** 3:13 11:15 11:16,20,25 12:2 12:8,18 33:11
**nj** 6:12
**northern** 22:4
**notice** 11:2 16:5 16:20 18:5
**noticing** 18:9
**number** 7:4,8,19 8:2 29:3
**ny** 2:3 5:20 6:4,19 34:23

**o**

**o** 2:21 7:1 34:1
**object** 13:4
**objected** 24:12
**objecting** 21:13
**objection** 8:8 12:10,12,13,23 13:13 21:4 27:14 27:24,25 28:12,14 28:16,21
**objections** 10:24 12:14 16:22 20:22 20:22 31:2

**objector** 21:22
**obligations** 3:10 10:12 11:24
**observation** 26:14
**obtain** 23:1
**obviously** 18:2
**occurred** 22:13
**ocp** 11:18,19
**offered** 18:3
**offering** 19:15
**office** 9:15,18
**office's** 8:18
**official** 4:8 5:4,18 8:4 9:23 20:16 30:4,6
**oh** 17:23
**okay** 7:22 10:7 11:12,14 13:19 14:13 16:11,15,17 27:20,22 29:1 30:23 31:20
**old** 10:23 34:21
**omnibus** 3:1 26:22
**once** 26:25
**ongoing** 11:23
**open** 19:23 26:18
**operating** 8:18,19 8:25
**opposition** 15:24
**optimism** 16:17
**order** 3:8 4:1 8:7 8:10 9:7,11,12 10:11 11:9,11 12:17 13:7 15:15 23:19 25:20 26:5 26:14 28:4,22 30:18,21 31:5
**orders** 3:4 10:7 31:5,6,8,9
**ordinary** 11:17,21
**originally** 11:16

ostensible 28:2,6
ought 17:10 19:21
outset 20:19
outside 22:13
overruled 27:15
 29:15 31:2
oversight 12:13

**p**

p 5:1,1 7:1
p.m. 15:10
pachulski 5:17
 9:23 13:15
page 15:10 33:4
pages 15:11,12
papers 11:8 20:21
 21:15
paragraph 28:4
 28:20,20,22
parameters 28:3
part 8:12
participate 7:9
 21:10 23:8 26:17
participation
 20:24 26:1,24
 28:18
parties 9:5 15:1
 19:12 21:14 31:13
partner 13:21
party 7:10 22:16
passes 11:1
pay 3:10
payment 11:3
pays 10:16
peabody 3:13
 11:16,16,20,25
 12:2,8,19 33:11
pedophilia 24:2
pending 31:11
people 7:8
perfect 23:9
perfectly 19:2
perilous 31:25

period 11:2
permitted 26:19
perspective 14:10
 16:14
pertains 15:25,25
 16:2
phone 11:25
 20:10
pinckney 5:5
place 15:2,13
plaintiff 1:13
plaintiffs 22:7,16
 24:14,21 30:1,3
plaintiffs' 29:22
 30:1
platform 7:6
play 17:9 18:25
 19:20
playing 24:24
please 7:9,11
 20:17 25:8 31:22
 31:24
point 22:20 23:4
policies 22:18
population 16:20
possibility 14:8
possible 11:18
 17:2
practical 22:21,22
practices 24:1
preclude 20:23
preliminary
 16:25 19:14,15
prepetition 10:14
present 13:11
 15:14
presentation 14:6
presentment
 15:15
pressed 15:23
previewing 22:5
priests 24:2

primary 15:20
prime 21:21
principally 17:4
probably 18:16
problem 10:13
 12:16 22:5,21,23
 23:21,24 24:15
procedural 23:6
proceed 15:16
proceeding 4:5,9
 21:9 22:9 24:11
proceedings 7:7
 32:5 34:4
proceeds 25:18
process 7:20
 13:23 14:2,8,21
 17:9 18:25 19:16
 19:20 27:8
professional
 11:17
program 3:9
 11:12 18:5 31:7
 33:9
programs 18:9
proof 15:23 16:4
 19:8,10
proofs 4:2
propose 15:10,14
proposed 8:7,10
 9:7 13:7 17:7 21:3
 28:4,9,10,22
 30:18
proposes 14:23
prosecuted 15:21
prosecution 23:14
prospect 16:8
protected 22:14
protective 25:20
 26:5
protocol 9:1
provide 8:15
 10:14 19:16

provided 8:16,24
 15:22 19:7
provides 11:21
providing 11:22
provision 27:3,10
proviso 23:19
psip 8:19
purchase 10:15
purposes 22:9
pushing 18:14
put 8:11 14:5
 23:18

**q**

quarterly 10:22
question 26:11
 30:20
questions 11:4
 12:1 20:19
quickly 8:11
quite 23:3

**r**

r 2:21 3:22 5:1 7:1
 34:1
radar 14:5
raised 16:4 26:13
 27:9
reach 8:13 18:22
 31:22
reached 18:8
read 9:9 20:21
 21:15
readily 21:16
real 22:5
really 22:19
reasons 31:2
receipt 8:21,22
receipts 8:17
received 8:3
recognize 21:22
 21:22 22:10,16,19
record 7:9 8:11
 9:9 31:3 34:4

recording 7:7
recover 24:19
reflect 30:25 31:1
reflected 8:6,10
  13:6
refused 24:3
regarding 18:5,16
  29:13
registered 7:8
regular 18:1,13
related 3:6,10,11
  4:3 9:2 10:4 19:10
  24:1
relating 28:2
  31:13
relationship
  11:20
relevant 24:19
relief 3:6,11 4:3
  10:5 11:5
remaining 14:21
reminder 31:4
repeatedly 18:3
reply 14:19 15:4,9
  26:22
report 8:5,25
reporting 8:14 9:2
  9:5 11:24
represent 12:14
  21:21
representation
  9:25 10:1 23:4
request 8:21 9:12
  14:18 23:12
requested 19:18
  28:21
requests 9:2 24:8
  25:19
required 19:11
research 3:19
reserved 9:5
resolution 10:1
  14:8 18:22 19:3

resolve 8:6 18:19
resolved 9:19
  17:10
resolving 16:24
respect 9:4 10:12
  11:3,10 12:18,25
  13:8 16:22,23
  17:4 19:6,17
  22:17 24:1,17
  27:9 28:17 30:11
  31:14
respectfully 9:12
response 21:4
  27:23
responsibility
  30:6
restricted 8:23
  9:2
restriction 26:24
result 22:25
retain 11:15
retention 12:2,6
  12:15 13:2,6,9
  31:8
retentions 12:7,22
  31:5
review 8:24
revised 8:7 9:7,13
  13:7 31:4
right 7:15,23,24
  9:14 10:2,21 11:7
  11:7 12:16,19
  13:10,18,18 14:13
  17:8,11,15 18:24
  19:24,25 20:7,8
  20:12,25 21:6,7
  22:13 23:5,16
  24:6 26:4,7,17
  27:7,8,12 28:13
  29:2,2 30:2,10,12
  30:25 31:3,20
rights 9:5

road 34:21
robert 5:15
rockville 1:8,12
  4:6 7:4
roman 1:8,12 4:5
  7:3
roost 22:6
rosenblum 6:6
  7:13,13,16,18 8:1
  10:9,22 11:14
  12:11 13:1,4,20
  14:10 20:2,3
  31:16,18,18
roster 7:7
rules 27:1
rulings 33:3

**s**

s 5:1 7:1
safe 31:24
sake 11:9 12:17
san 5:13
saw 21:3
saying 18:17
  24:13 25:14
scc 1:3,4 4:5
schedule 14:20,22
  15:24 18:21 27:5
  27:6
scope 21:23 28:8
screen 17:20
second 5:12 16:9
  21:5,23 22:1,10
see 9:15 17:19,20
  18:20 21:1
seeing 23:21
seek 20:23
seeking 23:25
  24:10
seen 12:9
segue 23:24
send 10:6 31:4
sense 14:3 21:5

separated 15:18
separately 27:4
separation 15:6
sequencing 26:16
  26:24
series 16:3
seriously 30:7
served 14:25 16:5
services 11:21,22
  12:4 18:8
set 14:17 15:21
  27:5,6
sets 20:22
setting 16:13
  19:17
settle 25:25
settlement 25:24
share 16:17 19:5
shelley 2:22
simply 23:12 30:8
sit 26:20
slated 11:17
small 10:19
snatch 29:20
solutions 7:6
  34:20
sonya 4:25 34:3,8
soon 18:6
sorry 23:9 25:2,4
  25:6 27:16 29:7
sort 14:3 22:5
  26:21,23 27:24
sound 25:3
sounds 7:24 16:22
south 5:5
southern 1:2
speak 7:10,11
  14:1 15:19
speaking 7:11
  25:5
special 3:14,17
  11:16 12:19 20:10
  20:16 30:16

specific 8:21
spend 19:12
spot 19:24
stage 18:12
standard 24:19
standing 22:19
stang 5:17,23 9:23
13:15 17:18,19,22
17:24,25 20:8,9
27:13,13,16 29:5
29:7,8,12,17,20
30:2
start 7:12
started 14:1
starts 22:7
state 22:15
stated 31:3
statement 9:8
29:13,19
states 1:1 2:1 6:16
8:4 9:15
status 7:19 13:20
23:15
stay 31:24
steal 13:11
straight 20:20
straightforward
11:8
streamlined 14:22
street 5:5,12 6:3
6:18
strike 15:7
strong 19:15
stronger 21:8
26:8
stuff 11:13
subject 9:6 18:3
27:1
submit 26:21
30:21
submitted 15:9
30:18,22

substantive 23:16
suggesting 25:21
suite 6:18 34:22
supplement 8:16
8:20
sure 15:17 17:3
17:19 18:25 19:24
25:9,12
surprise 16:24
surreply 26:22
survivor 16:20
survivors 30:5
swoop 27:7
system 3:5 10:4
33:7

t

t 34:1,1
take 15:2,13 18:6
29:23 30:7 31:9
talk 20:1
talked 16:19
talking 12:6 15:25
31:7,25
teeing 13:24
telephonically 7:6
tell 22:1
tentative 19:7
terms 26:7 28:8
thank 7:24 8:1
9:14 10:2 12:20
13:19 17:13 20:7
27:11,21 30:23
31:21 32:1,3,4
that'll 12:20,20
that's 9:25 12:11
13:12 14:3 15:23
17:13 19:8,18,21
21:11 22:3,21
23:9,21 25:17
26:15 28:23 29:2
29:19 31:19,21
thereto 3:10

there's 7:21 10:24
16:12,14 21:14
25:7 26:3,15 27:2
27:2,5,5 31:23
they're 11:18 12:3
18:13 19:14 21:10
21:10 26:25,25
27:1
they've 24:3
things 8:9 12:6
24:24 26:14
think 10:23 11:20
12:1,8,13 13:23
14:2,11 17:3,20
19:2,8,21 20:3
21:8,14 26:8 27:3
27:9 28:9 29:2,11
31:3,7,20
third 5:19 22:16
thought 13:13
29:8
thoughts 16:25
19:14,15
three 12:22
threshold 11:19
threw 28:3
thunder 13:11
time 7:11 19:12
24:3,18 31:25
32:1
timing 15:20
18:14
today 7:9,18 14:1
14:4 20:4 31:12
31:21 32:1
todd 6:7 14:15
topic 24:20
topics 24:3
tort 30:8
transactions 8:22
transcribed 4:25
transcript 34:4

translated 28:13
troubling 26:15
true 30:5 34:4
trustee 6:17 8:4
9:15
trustee's 9:18
try 15:17 25:10
26:18
trying 17:19
18:19,22 29:10
turn 20:6 24:14
turns 24:16
two 8:25 11:20
12:22 15:19 16:14
20:22 23:25 24:12
type 16:4 18:5
types 28:12

u

u.s. 2:23 6:17 9:18
unacceptable
18:18,18
uncontested 7:19
7:23 9:10
uncounted 23:4
underlying 27:25
understand 15:18
26:10
understood 30:10
undertaken 24:20
underwriters
5:11
unfortunately
25:6
unique 21:25
united 1:1 2:1
6:16 8:4 9:15
unknown 2:25
unsecured 4:8 5:4
5:18 9:24 20:17
22:8,12 30:7
update 7:19
use 3:4 10:4 14:23
15:8,11 24:22

33:6
**utility** 19:1

**v**

**v** 1:14 4:6
**value** 25:24
**values** 24:23
**varick** 6:18
**vehicle** 23:4
**veritext** 34:20
**version** 10:7 31:4
**versus** 19:18
**vesey** 6:3
**victims** 23:7 25:17
26:2
**victory** 29:21
**view** 19:5,7 23:20

**w**

**walk** 9:10
**want** 14:5 16:25
23:17,18 24:13,14
29:20
**wanted** 17:16,18
21:24 30:9
**way** 14:5 18:18
21:11 28:11
**we'll** 26:18 31:25
**we're** 7:3 10:24
18:17 20:18,19
21:11 24:10
**we've** 12:9,21
18:7,8 22:11
**what's** 10:8
**wheatman** 18:4,7
**wi** 5:6
**willing** 26:23
**wish** 9:21
**wishes** 11:10
12:17
**withdrawing**
28:14,15
**wonder** 26:17
**word** 10:7 31:4

**words** 25:14,24
**work** 9:4 16:21
**worked** 13:5,23
14:20 17:6
**working** 16:8 28:5
**written** 9:6

**x**

**x** 1:5,11,17 33:1

**y**

**yeah** 12:5 28:24
**years** 10:23 23:25
24:13
**york** 1:2,8,12 2:3
5:20 6:4,19 10:12
10:25 22:15
**you'd** 12:25 29:18
**you'll** 31:4
**you're** 15:18,25
23:3,20,20,21,23
24:24 25:3,3,4,14
28:14
**you've** 23:23 25:5

**z**

**ziehl** 5:17 9:23
13:15
**zipes** 6:21 9:17,17